CHOI & ITO
Attorneys at Law

CHUCK C. CHOI
ALLISON A. ITO
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
Email: cchoi@hibklaw.com;
aito@hibklaw.com

Attorneys for Chapter 7 Trustee,
Dane S. Field

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>ALOHA SPORTS INC.,<br><br>        Debtor. | Bk. No. 10-00838<br>(Chapter 7)<br><br>**MOTION TO APPROVE SETTLEMENT AND DISTRIBUTION OF PROCEEDS; EXHIBIT "A"; DECLARATION OF DANE S. FIELD**<br><br>Hearing<br>Date:    October 16, 2023<br>Time:    10:30 a.m<br>Judge:  Hon. Robert J. Faris |

## MOTION TO APPROVE SETTLEMENT AND
## DISTRIBUTION OF PROCEEDS

79517

U.S. Bankruptcy Court - Hawaii   #10-00838   Dkt # 549   Filed  09/16/23   Page 1 of 30

DANE S. FIELD, the chapter 7 trustee (the "Trustee") for the bankruptcy estate of ALOHA SPORTS INC. ("Debtor" or "Aloha Sports") which is pending in the United States Bankruptcy Court for the District of Hawaii (the "Court"), by and through his undersigned counsel, moves this Court, for an order as follows:

(a) Approving proposed Settlement Agreement and Release (the "Settlement") between the Trustee and National Collegiate Athletic Association (the "NCAA") of $465,000.00 (the "Gross Settlement Amount") pursuant to the Settlement which is attached hereto as Exhibit A;

(b) Authorizing the Trustee to disburse Litigation Payments (as set forth below in paragraph 10 below) from the Gross Settlement Amount to contingency counsel.

In support of this motion, the Trustee respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.      Aloha Sports was the operator of the Aloha Bowl and the Oahu Bowl, established and regularly-scheduled post-season college football "bowl" games.  In

2

March, 2000, the then-owners of Aloha Sports (the "Former Owners") sold their shares of stock in Aloha Sports to ASI Acquisition Inc. ("ASI"), which became the sole shareholder of Aloha Sports. As part of the purchase transaction, ASI issued four promissory notes to the Former Owners, secured by a pledge of the stock of Aloha Sports. ASI became the sole shareholder of Aloha Sports, and the Aloha Sports stock was ASI's primary asset.

4.     In 2001 and 2002, ASI missed payments on the four promissory notes held by the Former Owners. Notices of default were sent to ASI, but the Former Owners failed to foreclose their security interest in the Aloha Sports stock in accordance with the pledge agreement and the Uniform Commercial Code.

5.     In 2001, the Aloha and Oahu Bowls were renamed, with the approval of the NCAA, as the San Francisco Bowl and the Seattle Bowl, respectively. The San Francisco Bowl was never played, due to the withdrawal of certification by the NCAA. The Seattle Bowl was staged twice, in 2001 and 2002, but was then decertified by the NCAA. Prior to the decertification, the owners of ASI contend that they had entered into a binding letter of intent with a third party to purchase Aloha Sports for over $2 million. The NCAA's de-certification of the Seattle Bowl effectively ended the sale of Aloha Sports to the third party.

6.     On October 20, 2005, Aloha Sports Inc. initiated litigation against the NCAA, which is currently styled, *Dane S. Field, Trustee of the Bankruptcy Estate*

3

*of Aloha Sports Inc. v. The National Collegiate Athletic Association*, Civil No. 06-1-1832-10 (DEO), in the Circuit Court of the First Circuit, State of Hawaii (the "Litigation"), asserting, among other things, tortious interference and a claim for an unfair method of competition under Hawaii Revised Statutes Chapter 480 ("UMOC"). The complaint prayed for treble damages, costs and attorney's fees, and punitive damages.

7.      The NCAA moved for a dismissal of the complaint with prejudice. The state court dismissed part of Aloha Sports' unfair competition cause of action (concerning certain payments required to be made by Aloha Sports and actions by the NCAA prior to the effective date of the statute providing the private right of action, and the NCAA refusing to permit a transfer of ownership of the Seattle Bowl) but allowed other parts of this cause of action to remain.  The claims of interference with prospective economic advantage and breach of contract were not dismissed.  The NCAA's subsequent motion for summary judgment was denied in its entirety.

8.      In or about 2011, the parties proceeded to trial and a Hawaii jury rendered a defense verdict in favor of the NCAA on Aloha Sports' tortious interference claim.  Thereafter, Aloha Sports initiated an appeal – and the parties have been in litigation ever since.

4

9.     In summary, the Litigation has been pending for nearly 20 years, has resulted in one trial, multiple appeals to the ICA, one appeal to the Hawaii Supreme Court, and, in accordance with the decision of that Court, a remand for another trial on the UMOC claim, the only remaining claim.

10.     The Debtor and its holding company ASI Acquisition Inc. ("ASI") filed for relief under Chapter 11 of the United States Bankruptcy Code on March 25, 2010.  On March 19, 2015, both chapter 11 cases were converted to Chapter 7, and Dane S. Field was appointed as Chapter 7 Trustee.

11.     On December 27, 2017, Dane S. Field, as Trustee of the Debtor, was substituted as plaintiff in the Litigation.

12.     The NCAA denies any and all the allegations made in the Litigation and denies that the NCAA is liable to the Debtor or any other person or entity for any of the claims that have been raised or could have been raised in the Litigation or for any claims arising out of or in any way connected to the operations of the Debtor or its dealings with the NCAA.

13.     To avoid the future costs, burdens and distractions of continued litigation (particularly given the almost two decades that have elapsed since the underlying events giving rise to the Litigation), the Parties now desire, and through execution of this Settlement Agreement intend, to settle and resolve with finality

all claims alleged in, arising out of, relating to, or in connection with the subject matters of the Litigation.

## RELIEF REQUESTED AND BASIS

14. The following amounts (the "Litigation Payments") are to be paid from the Gross Settlement Amount:

| | |
|---|---|
| $ 186,000.00 | Attorneys' Fees (Kesselman Brantly Stockinger, LLP and Case Lombardi, A Law Corporation) |
| $ 8,764.32 | General Excise Tax |
| $ 29,737.61 | Primary Counsel Expenses (as reported by FWR LLLC-$10,039.91; Kesselman Brantly Stockinger LLP - $19,670.89; Case Lombardi A Law Corporation – $26.81) |

15. The Trustee requests authority to pay the gross amount of fees of $186,000.00 (40% of $465,000.00) plus applicable GET, and costs of $29,737.61. The split of the contingency fee is: 60% to Kesselman Brantly Stockinger ($116,858.59), and 40% to Case Lombardi A Law Corporation ($77,905.73). The Trustee also requests authority to pay expenses: Kesselman Brantly Stockinger LLP ($19,670.89); FWR LLLC ($10,039.91); and Case Lombardi A Law Corporation ($26.81).

16. After payment of attorneys' fees and costs, the remaining amount available for the bankruptcy estate will be approximately $240,498.07.

17. Federal Rule of Bankruptcy Procedure 9019(a) authorizes this Court to

6

approve a compromise or settlement. This section provides that "on motion by the trustee and after hearing on notice to creditors . . . the court may approve a compromise or settlement." Fed.R.Bankr. P. 9019(a).

18.     Under the standards established by the Ninth Circuit, the Court should approve a compromise or settlement if it is "fair and equitable." *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 838 F.2d 610, 620 (9th Cir. 1988) (quoting *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied, Martin v. Robinson*, 479 U.S. 854 (1986)). Specific factors to be considered in determining whether a compromise or settlement is fair and equitable include: (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the proper deference to the reasonable views of parties having a paramount interest. *In re Woodson*, 838 F.2d at 620. *(citation omitted).*

19.     The result of taking the claims to trial is uncertain. This settlement reflects a compromise by the parties because of their appreciation of the uncertainty of litigation. The settlement avoids the uncertainty of litigation and further costs to the estate in litigating these claims.

20.     The Litigation would have been a complex case to litigate. A trial would be inconvenient and expensive for all parties involved, especially given the

U.S. Bankruptcy Court - Hawaii   #10-00838   Dkt # 549   Filed  09/16/23   Page 7 of 30

nature of the issues involved and the almost twenty years that have elapsed since the underlying events. Further the Trustee is unaware of any party that would oppose the Settlement Agreement. For all of these reasons, the parties have determined that it is preferable to settle the matter and believe that the settlement is a fair resolution of the case. Their views are reasonable and should be afforded deference by the Court in evaluating the fourth prong.

21. The Trustee submits that the Gross Settlement Amount is sufficient to pay the Litigation Payments, other estimated administrative fees and expenses of the estate, and a portion of chapter 11 administrative expenses but no distributions to the holders of allowed, general unsecured claims. The settlement amount is fair and reasonable as further litigation could recover less than the Gross Settlement Amount or nothing at all.

22. In evaluating the fairness of a compromise or settlement, "a trial or 'mini-trial' on the merits is not required." *Official Committee of Unsecured Creditors v. James Talcott, Inc. (In re International Distrib. Centers, Inc.),* 103 B.R. 420, 423 (S.D.N.Y. 1989). Rather, the Court must simply consider the various factors that determine the reasonableness of the compromise. *In re* A&C, 784 F.2d at 1381. This Court should approve the settlement as long as it is above the "lowest point of reasonableness." *See In re International Distrib. Centers, Inc.*,

8

at 423 (citations omitted).  The Trustee submits that the Settlement is well within the lowest point of reasonableness.

WHEREFORE, the Trustee respectfully requests that the Court enter an order approving the Settlement, authorizing the distribution/payment of the Gross Settlement Amount as set forth above; authorizing the Trustee to execute any and all documents necessary to implement the Settlement and to disburse the Litigation Payments from the Gross Settlement without any further fee application or order of the Court; and granting such other and further relief as may be appropriate.

DATED:  Honolulu, Hawaii, September 15, 2023

Respectfully submitted,

/s/ Chuck C. Choi
Chuck C. Choi
Allison A. Ito
Attorneys for Chapter 7 Trustee

9

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement Agreement") is entered into by and between Dane S. Field, Trustee of the Bankruptcy Estate of Aloha Sports Inc. ("Trustee") for and on behalf of the Bankruptcy Estate of Aloha Sports Inc. ("ASI") and The National Collegiate Athletic Association (the "NCAA"). ASI and the NCAA may each be referred to in this Settlement Agreement individually as a "Party," and referred to collectively as the "Parties." The NCAA includes its affiliates, subsidiaries, employees, and attorneys. Capitalized terms shall have the meaning provided by the definitions set forth in this Settlement Agreement.

**WHEREAS**, on October 20, 2005, Aloha Sports Inc. initiated litigation against the NCAA, which is currently styled, *Dane S. Field, Trustee of the Bankruptcy Estate of Aloha Sports Inc. v. The National Collegiate Athletic Association*, Civil No. 06-1-1832-10 (DEO), in the Circuit Court of the First Circuit, State of Hawaii (the "Litigation"), asserting, among other things, a claim for an unfair method of competition under Hawaii Revised Statutes Chapter 480 ("UMOC").

**WHEREAS**, the Litigation was initiated after a prior case was filed in the United States District Court for the District of Hawaii which asserted substantially the same state law claims, which were dismissed without prejudice upon the payment of specified costs and fees to the NCAA, and also asserted a federal antitrust claim which ASI voluntarily dismissed with prejudice to allow the filing of the Litigation.

**WHEREAS**, the Litigation has been pending for nearly 20 years, has resulted in one trial, multiple appeals to the ICA, one appeal to the Hawaii Supreme Court, and, in accordance with the decision of that Court, a remand for another trial on the UMOC claim, the only remaining claim.

**WHEREAS**, ASI's common stock has been owned, at various times, in whole or in part, by Leonard Klompus, Michael Long, Brian DiMartino, Richard Schaller, who sold the equity to ASI Acquisition Inc. ("Acquisition"), which is owned by Terry Daw and Richard "Rio" Banner, who acquired the stock from Frederick ("Fritz") Rohlfing.

**WHEREAS**, ASI and Acquisition have, over time, had various officers and employees, including Klompus, Rohlfing, Daw, James Haugh, and Banner.

**WHEREAS**, Acquisition currently owns the stock of ASI and Acquisition is owned by Daw and Banner. Banner is a creditor of both ASI and Acquisition.

**WHEREAS**, on March 25, 2010, Aloha Sports Inc. filed a Chapter 11 Voluntary Bankruptcy Petition in the United States Bankruptcy Court, District of Hawaii (the "Bankruptcy Court"), Case No. 10-00838 (the "Bankruptcy Proceeding").

**WHEREAS**, Acquisition also filed a voluntary petition for bankruptcy which remains pending and is jointly-administered with the ASI bankruptcy.

**WHEREAS**, on March 19, 2015, the Bankruptcy Proceedings were converted to Chapter 7 and Dane S. Field, as Trustee of ASI, was appointed Trustee of ASI and Acquisition under the Order Granting Motion to Convert Chapter 11 Case to Chapter 7.

**WHEREAS**, on December 27, 2017, Dane S. Field, as Trustee of ASI, was substituted as plaintiff in the Litigation.

**WHEREAS**, the NCAA denies any and all the allegations made in the Litigation or the prior litigation and denies that the NCAA is liable to ASI or any other person or entity for any of the claims that have been raised or could have been raised in the Litigation or for any claims arising out of or in any way connected to the operations of ASI or its dealings with the NCAA.

**WHEREAS**, no claims other than the claims made in the Litigation and the prior dismissed litigation have been asserted against the NCAA or are known to exist against the NCAA arising out of the activities of ASI or Acquisition.

**WHEREAS**, ASI last had business dealings with the NCAA in 2003 and ceased its business operations in 2003.

**WHEREAS**, all parties to this Agreement, their shareholders (as indicated by the absence of any claim against the NCAA in the Acquisition schedules filed in Bankruptcy Case No. 10-00835), the Trustee, and their attorneys of record are not aware of any other or further claims and have not been made aware of any such claims against the NCAA arising out of the activities of ASI or Acquisition.

**WHEREAS**, all such entities and persons acknowledge that all applicable statutes of limitations have run on any other or further claims against the NCAA and have not been made

U.S. Bankruptcy Court - Hawaii  #10-00838  Dkt # 549  Filed 09/16/23  Page 12 of 30

aware of any claims or facts which might be claimed to toll the running of all applicable statutes of limitations.

**WHEREAS**, counsel of record acknowledge these recitals as accurate inducements to the resolution of the Litigation and the entry into this Settlement Agreement.

**WHEREAS**, the long passage of time and the public nature of these proceedings are believed to give rise to judicial estoppel precluding any other or further claims arising out of the business dealings of ASI with the NCAA and no signatory to the Agreement is aware of any such claims or facts giving rise to any such claims.

**WHEREAS**, to avoid the future costs, burdens and distractions of continued litigation, the Parties now desire, and through execution of this Settlement Agreement intend, to settle and resolve with finality all claims alleged in, arising out of, relating to, or in connection with the subject matters of the Litigation (the "Settled Claims").

**NOW THEREFORE**, in consideration of the mutual covenants and promises hereinafter made, the receipt and sufficiency of which is hereby acknowledged, the Parties, as defined herein, agree as follows:

1. **Stipulated Dismissal with Prejudice.** In consideration of all Parties' performance and compliance with their obligations under this Settlement Agreement, the Parties shall execute a stipulation for dismissal of the Litigation to be held by counsel for the NCAA until dismissal is to be entered under the next clause; within 7 calendar days of the receipt of the Settlement Payment described in Section 3 of this Settlement Agreement, the Parties shall file the executed stipulation for dismissal of the Litigation with prejudice, with each Party to bear its own costs, interest, and attorneys' fees.

2. **Parties to Each Pay Their Own Attorneys' Fees and Costs.** For the avoidance of doubt, the Parties, as defined herein, agree that each Party will bear its own attorneys' fees and costs incurred in connection with the Litigation, which expressly includes any fees and costs associated with negotiating the Settlement Agreement, the bankruptcy proceeding, and ancillary proceedings, and prior related litigation, or otherwise.

3. **Settlement Payment.** In consideration of a full and final release of all claims in the Litigation, as well as the Parties' agreement on all the other terms and conditions set forth in

U.S. Bankruptcy Court - Hawaii   #10-00838   Dkt # 549   Filed 09/16/23   Page 13 of 30

this Settlement Agreement, the NCAA will withdraw its Proof of Claim filed on August 2, 2010, in the Bankruptcy Proceeding and will pay Dane S. Field, Trustee of the Bankruptcy Estate of Aloha Sports Inc., the amount of Four Hundred Sixty-Five Thousand Dollars ($465,000) ("Settlement Payment") within thirty (30) days of the Bankruptcy Court's order approving the settlement described by this Settlement Agreement becoming a final order.

4.    **Mutual Releases.**  The Parties shall and hereby do release, forever discharge, and covenant not to sue any other Party or its past, present, and/or future agents, employees, representatives, officers, directors, shareholders, secured parties, members (which includes member institutions), attorneys, accountants, insurers, receivers, advisors, consultants, partners, partnerships, parents, divisions, subsidiaries, affiliates, assigns, independent contractors, successors, heirs, predecessors in interest, joint ventures, lenders, witnesses, estates, and commonly-controlled corporations, including, for the avoidance of doubt, ASI   ("Released Parties") with respect to the Settled Claims and/or the Litigation, or any other claim which a Party asserted or could have asserted against the Released Parties arising out of, relating to, or in connection with the Litigation, Bankruptcy Proceeding, or Settled Claims ("Released Claims"). Nothing in this paragraph shall be construed to prevent any Party from bringing any later action solely to enforce the provisions of this Settlement Agreement.

5.    **Further Assurances.** The Parties each agree to execute any other documents which may be reasonably necessary to effectuate the objectives set forth in this Settlement Agreement.  The Parties consent to, and will join with, the NCAA seeking bar or similar orders from the Circuit Court and/or the Bankruptcy Court precluding any further claims against the NCAA by any person or entity on notice of this Settlement Agreement or receiving any funds or benefit from the closing of the jointly-administered Bankruptcies.  However, while the Parties will agree to join the NCAA's request, it is understood that this Settlement Agreement is not contingent on the Circuit Court and/or the Bankruptcy Court granting the NCAA's request for a bar or similar orders.

6.    **General Representations and Warranties.**

(a)    Each Party represents and warrants that they have the full right, power, and authority to enter into this Settlement Agreement and to make all of the grants, promises, and covenants contained herein and that any required consents, authorizations, or approvals have been

- 4 -

obtained. Notwithstanding the foregoing, each Party is fully informed and understands, however, that any authority of the Trustee is conditioned upon Bankruptcy Court approval of the terms of this Settlement Agreement, as more fully addressed in paragraph 7 below.

(b) Each Party represents and warrants that they are voluntarily entering into this Settlement Agreement in good faith, based solely and completely on their own judgment and upon the advice and counsel of their respective attorneys.

(c) Each Party agrees and intends that this Settlement Agreement is to be a final and complete resolution of all disputes between and among them with respect to the Settled Claims and the Litigation. The settlement compromises claims that are contested and will not be deemed an admission by any Party as to the merits of any claim or defense.

7. **Bankruptcy Court Approval**: This Settlement Agreement shall be subject to the approval of the Bankruptcy Court. The Trustee shall file a motion (the "Settlement Motion") in the Bankruptcy Proceeding, after first sharing a copy of that motion with counsel for the NCAA, seeking Bankruptcy Court approval of this Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. ASI may disclose the terms of this Settlement Agreement to the Bankruptcy Court (and may attach a copy of this Settlement Agreement to the Settlement Motion) and to any party, person, entity or creditor to be served with notice of any motion through which entry of an order approving the Settlement Agreement (the "Approval Order") is sought.

8. **Confidentiality and Non-Disparagement**. The Parties desire to maintain confidentiality of the terms of this Settlement Agreement and of the Settlement Payment. Recognizing the Parties' desire to maintain confidentiality of the terms of this Settlement Agreement, the Parties agree that the provisions of this Settlement Agreement are confidential and, except as may be necessary to preserve and enforce any rights created by this Settlement Agreement, shall not be disclosed by them or their attorneys to any third person without the other Party's written consent; provided, however, that any Party may disclose the Settlement Payment paid under this Settlement Agreement on a need-to-know basis: (a) in as limited a manner as possible to persons to whom such disclosure is reasonably necessary for the conduct of their business affairs (such as attorneys, accountants, auditors, tax advisors, financial planners, tax authorities, insurers, or member institutions); or (b) when compelled by a court or governmental authority of competent jurisdiction or as otherwise required by law provided, however, that the

party intending any such disclosure shall: (1) immediately notify the other Party of any such obligation; (2) refrain from commencing any such disclosure until the other Party has either (i) waived any objection to the disclosure sought thereunder, or (ii) timely contested the process or order, and made and presented objections to a court of competent jurisdiction in the matter, and such objections have been denied; (iii) provided, however, that if the NCAA neither waives any objection nor timely contest the process or order, the Trustee may make the appropriate disclosure; and (3) limit the scope of any such disclosure to the minimum amount of information necessary to accomplish the permitted purpose of such disclosure. Notwithstanding the foregoing, the Parties acknowledge that the Trustee will file a copy of the Settlement Agreement and describe the terms and conditions of this Settlement Agreement in the Bankruptcy Proceeding and otherwise comply with the requirements of Rule 9019 of the Federal Rules of Bankruptcy Procedure in seeking approval of this Settlement Agreement. Further, as more fully set forth in paragraph 7, the Trustee shall have the right to effectuate notice to any party, person, entity or creditor to be served with notice of any motion through which entry of the Approval Order is sought. The Approval Order of the Bankruptcy Court may include a copy of this Settlement Agreement pursuant to the Court's normal practice. Nothing in this Settlement Agreement shall preclude either the Trustee or the Bankruptcy Court from including copies of this Settlement Agreement or otherwise describing its terms in court filings, including, but not limited to, the Trustee's Final Report, the Notice of Trustee's Final Report, and the Trustee's Final Account. In addition, the Parties agree that the Trustee shall have the right to provide a copy of the Settlement Agreement to ASI's accountants, and Acquisition and its accountants, auditors, and tax advisors to address any remaining tax issues that may need to be addressed. The Parties, as defined herein, further agree to refrain from making any disparaging remarks about each other to third parties. Each Party agrees that any disclosure in violation of this Agreement shall constitute and be treated as a material breach of this Agreement.

    **9.**     **No Admission of Liability.** This settlement shall not be deemed an admission of liability by any Party.

    **10.**     **No Further Assignment.** The obligations of each Party hereto are not subject to further assignment to any entity other than a legal successor of the Party, absent the express written consent of the other Party.

U.S. Bankruptcy Court - Hawaii   #10-00838   Dkt # 549   Filed 09/16/23   Page 16 of 30

**11.    Scope of Promises, Representations and Inducements.** The Parties acknowledge, warrant and represent that no promises, representations, agreements, arrangements, understandings, or inducements – oral or written – between or among the Parties relating to the subject matter of this Settlement Agreement, the Litigation, and/or the Released Claims have been made to secure the execution of the releases above or this Settlement Agreement except as set forth in this Settlement Agreement, and that the releases above and this Settlement Agreement are executed without reliance on any statements or any representations not contained herein.

**12.    Investigation**.  Each Party has made such investigations of the facts pertaining to this Settlement Agreement as it/they deem necessary and that they have been fully advised by counsel of their choosing. The Parties understand that if any fact with respect to any matter covered by this Settlement Agreement is later found to be other than or different from, the facts now believed by the Parties to be true, each Party expressly accepts and assumes the risk of such possible difference in facts and agrees that this Settlement Agreement shall become and remain effective notwithstanding such different facts.

**13.    Successors.**  This Settlement Agreement shall inure to the benefit of the respective successors and assigns of the Parties, and each and every one of the Releasees shall be deemed to be intended third-party beneficiaries of this Agreement.

**14.    Severability.**  If any one or more of the provisions of this Settlement Agreement should be ruled wholly or partly invalid or unenforceable by a court or other government body of competent jurisdiction, then: (i) the validity and enforceability of all provisions of this Settlement Agreement not ruled to be invalid or unenforceable shall be unaffected; (ii) the effect of the ruling shall be limited to the jurisdiction of the court or other government body making the ruling; (iii) the provision(s) held wholly or partly invalid or unenforceable shall be deemed amended, and the Parties, court or other government body is authorized to reform the provision(s), to the minimum extent necessary to render them valid and enforceable in conformity with the Parties' intent as manifested in this Settlement Agreement; and (iv) if the ruling and/or the controlling principle of law or equity leading to the ruling is subsequently overruled, modified, or amended by legislative, judicial, or administrative action, then the provision(s) in question as originally set forth in this Settlement Agreement shall be deemed valid and enforceable to the maximum extent permitted by the new controlling principle of law or equity.

U.S. Bankruptcy Court - Hawaii   #10-00838   Dkt # 549   Filed 09/16/23   Page 17 of 30

**15. Survival.** The Parties hereby agree that the provisions of this Settlement Agreement including, without limitation, the confidentiality, non-disparagement, representations, warranties, covenants, and releases made herein, shall survive the execution of this Settlement Agreement and the performance by the Parties of their respective obligations under this Settlement Agreement.

**16. Construction.** Each Party agrees that it has had ample opportunity to have this Settlement Agreement reviewed by its counsel of choice and that this Settlement Agreement has been approved as to its form and content. This Settlement Agreement has been subject to negotiations and discussions between the Parties and their counsel of choice, and has been, and shall be construed to have been drafted by all Parties to it so that any rule construing ambiguities against the drafter shall have no force or effect.

**17. No Waiver.** The failure of any Party to insist upon compliance with any of the provisions of this Settlement Agreement or the waiver of any such provision, in any instance, shall not be construed as a general waiver or relinquishment by such Party of any other provision of this Settlement Agreement.

**18. Captions or Headings.** The captions or headings used in this Settlement Agreement are for the Parties' convenience and may not be used to interpret this Settlement Agreement. The captions or headings in no way define, limit, extend, describe, or affect the Parties' intent or the scope or substance of any paragraph of this Settlement Agreement.

**19. Amendments in Writing.** This Settlement Agreement may not be modified, amended or any of its provisions waived, except by an instrument in writing executed by all of the Parties hereto and delivered in accordance with the notice requirements of this Settlement Agreement.

**20. Notices.** All notices and other communications provided for by this Settlement Agreement (collectively, the "Notices") shall be in writing, shall be addressed to the Parties at their respective addresses set forth below (or such other address as a Party notifies the other Party in accordance with this Notice provision) and shall be delivered by hand or sent by a recognized overnight delivery service and email. All Notices shall be deemed to be properly given or made upon the earliest to occur of (a) actual delivery or (b) 2 days after being sent by overnight delivery service. This provision does not apply to service of process, if any.

- 8 -

If to the NCAA:

The National Collegiate Athletic
Association
Attn: Scott Bearby
700 W. Washington Street
P.O. Box 6222
Indianapolis, Indiana 46206-6222
sbearby@ncaa.org

With a copy to:

Gregory L. Curtner
Matthew Kennison
Riley Safer Holmes & Cancila LLP
121 W. Washington St, Ste. 402
Ann Arbor, MI 48104
gcurtner@rshc-law.com
mkennison@rshc-law.com


If to Trustee:

Chuck C. Choi
Allison A. Ito
Choi & Ito
700 Bishop Street, Suite 1107
Honolulu, Hawaii 96813
cchoi@hibklaw.com
aito@hibklaw.com

With a copy to:

David W. Kesselman, Esq.
Kesselman Brantly Stockinger LLP
1230 Rosecrans Avenue, Suite 400
Manhattan Beach, California 90266
dkesselman@kbslaw.com


21.    **Governing Law; Jurisdiction.** This Settlement Agreement and any questions concerning its validity, construction, or performance shall be governed by and construed in accordance with the laws of the State of Hawaii, without recourse to any conflict of law principles.

22.    **Enforcement of Settlement Agreement.** Disputes under this Settlement Agreement shall be resolved by attempted resolution first through the Parties' counsel of record; if the attempted resolution through the Parties' counsel of record is unsuccessful then either Party can seek relief from the Bankruptcy Court which shall retain jurisdiction to resolve all disputes over the enforcement of the settlement agreement. Specifically, (a) Either Party shall promptly inform the other in writing of any dispute; (b) Within 10 business days of such notice, or such other time frame as is mutually agreed to, the Parties' counsel of record shall meet and confer in an attempt to resolve the dispute; (c) If counsel of record are unable to resolve the dispute within a time frame acceptable to either Party the dispute shall be presented to the Bankruptcy Court. The prevailing Party in any action brought for the enforcement, interpretation, or breach of this Settlement Agreement shall be entitled to receive from the losing Party its reasonable attorneys' fees and costs of litigation, in addition to any other relief under law or equity to which it may be entitled.

- 9 -

23.     **Counterparts; Electronic Signatures.** This Settlement Agreement may be executed in counterparts, any one of which need not contain the signatures of more than one Party. Each such counterpart shall be deemed an original and, when taken together with the other signed counterparts, shall constitute one and the same Agreement. The Parties further agree that the Parties and their counsel may execute this Settlement Agreement using an electronic signature and that the electronic signature is deemed an original and is enforceable to the same extent as if it were an ink-signed document.

24.     **Entire Agreement.** This Settlement Agreement constitutes the entire agreement of the Parties concerning the subject-matter hereof and supersedes all prior and contemporaneous written or oral agreements or representations between or among the Parties concerning the subject matter hereof.

25.     **Cooperation.** The Parties covenant and agree that they will cooperate in executing or preparing any documentation necessary to reflect or allow enforcement of the releases, assignments or other undertakings herein, or otherwise to effectuate the intent and purposes of this Settlement Agreement.

26.     **Effective Date.** The Effective Date of this Settlement Agreement is on the first date on which the Settlement Agreement has been executed by all Parties.

*****

[*The remainder of this page is intentionally left blank. Signature page follows.*]

U.S. Bankruptcy Court - Hawaii  #10-00838  Dkt # 549  Filed 09/16/23  Page 20 of 30

DocuSign Envelope ID: C5A0B26B-C98C-43C0-AE81-EC4A4D4CC135

IN WITNESS WHEREOF, the Parties hereto enter this Settlement Agreement. Each person signing this Settlement Agreement represents and warrants that he or she has been duly authorized to enter into and execute this Settlement Agreement by the Settling Party or entity on whose behalf it is indicated that the person is signing.

**The National Collegiate Athletic Association.**

Signature: _Mario Morris_

Printed Name: _Mario Morris_

Title: _Senior Vice President of Administration and CFO_

Date: _7/19/2023 | 8:12 AM EDT_

**Dane S. Field, Trustee of the Bankruptcy Estate of Aloha Sports Inc.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

**APPROVED AS TO FORM AND CONTENT:**

**Chuck C. Choi, Counsel for Dane S. Field.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

IN WITNESS WHEREOF, the Parties hereto enter this Settlement Agreement. Each person signing this Settlement Agreement represents and warrants that he or she has been duly authorized to enter into and execute this Settlement Agreement by the Settling Party or entity on whose behalf it is indicated that the person is signing.

**The National Collegiate Athletic Association.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

**Dane S. Field, Trustee of the Bankruptcy Estate of Aloha Sports Inc.**

Signature: _Dns Z Phtui_

Printed Name: _Dane S. Field, Trustee_

Title: _Trustee_

Date: _2-6-23_

**APPROVED AS TO FORM AND CONTENT:**

**Chuck C. Choi, Counsel for Dane S. Field.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

- 11 -

IN WITNESS WHEREOF, the Parties hereto enter this Settlement Agreement. Each person signing this Settlement Agreement represents and warrants that he or she has been duly authorized to enter into and execute this Settlement Agreement by the Settling Party or entity on whose behalf it is indicated that the person is signing.

**The National Collegiate Athletic Association.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

**Dane S. Field, Trustee of the Bankruptcy Estate of Aloha Sports Inc.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

## APPROVED AS TO FORM AND CONTENT:

**Chuck C. Choi, Counsel for Dane S. Field.**

Signature: _____

Printed Name: _Chuck C. Choi_____

Title: _Attorney for Dane S. Field_____

Date: _July 7, 2023_____

- 11 -

**Frederick W. Rohlfing, III, Counsel for Dane S. Field.**

Signature: _Frederick W. Rohlfing, III_

Printed Name: _Frederick W. Rohlfing III_

Title: _Counsel for Dane S. Field_

Date: _July 7, 2023_

**David W. Kesselman, Counsel for Dane S. Field.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

**Amy T. Brantly, Counsel for Dane S. Field.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

**Gregory Curtner, Counsel for The National Collegiate Athletic Association.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

- 12 -

**Frederick W. Rohlfing, III, Counsel for Dane S. Field.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____


**David W. Kesselman, Counsel for Dane S. Field.**

Signature: _____

Printed Name: __David W. Kesselman_____

Title: __Partner_____

Date: __July 6, 2023_____


**Amy T. Brantly, Counsel for Dane S. Field.**

Signature: _____

Printed Name: __Amy T. Brantly_____

Title: __Partner_____

Date: __July 6, 2023_____


**Gregory Curtner, Counsel for The National Collegiate Athletic Association.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

**Frederick W. Rohlfing, III, Counsel for Dane S. Field.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

**David W. Kesselman, Counsel for Dane S. Field.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

**Amy T. Brantly, Counsel for Dane S. Field.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

**Gregory Curtner, Counsel for The National Collegiate Athletic Association.**

Signature: _____

Printed Name: _Gregory L. Curtner_

Title: _Partner, Riley Safer Holmes & Cancila LLP_

Date: _July 20, 2023_

**Matthew P. Kennison, Counsel for The National Collegiate Athletic Association.**

Signature: _____

Printed Name: Matthew P. Kennison

Title: Partner, Riley Safer Holmes & Cancila LLP

Date: July 20, 2023

**Jerrold K. Guben, Co-Counsel for The National Collegiate Athletic Association.**

Signature: _____

Printed Name: JERROD K. GUBEN

Title: Attorney

Date: 7-20-2023

**William C. McCorriston, Co-Counsel for The National Collegiate Athletic Association.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

**Jordon J. Kimura, Co-Counsel for The National Collegiate Athletic Association.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

- 13 -

**Matthew P. Kennison, Counsel for The National Collegiate Athletic Association.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

**Jerrold K. Guben, Co-Counsel for The National Collegiate Athletic Association.**

Signature: _____

Printed Name: _____

Title: _____

Date: _____

**William C. McCorriston, Co-Counsel for The National Collegiate Athletic Association.**

Signature: _____

Printed Name: _____William C. McCorriston_____

Title: _Of Counsel, McCorriston Miller Mukai MacKinnon LLP_

Date: _7/20/2023_____

**Jordon J. Kimura, Co-Counsel for The National Collegiate Athletic Association.**

Signature: _____

Printed Name: _____Jordon J. Kimura_____

Title: _Partner, McCorriston Miller Mukai MacKinnon LLP_

Date: _____7/20/2023_____

- 13 -

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF HAWAII

In re

ALOHA SPORTS, INC.,

        Debtor.

Bk. No. 10-00838
(Chapter 7)

## DECLARATION OF DANE S. FIELD

I, DANE S. FIELD, hereby declare under penalty of perjury that:

1.     I am the duly appointed Chapter 7 Trustee for the estate of ALOHA SPORTS INC. (the "Debtor").

2.     I make this declaration in support of my *Motion to Approve Settlement* ("Motion").

3.     Terms used herein and not otherwise defined shall have the meanings given them in the Motion.

4.     Except as otherwise indicated, all of the facts set forth in this Declaration are based upon (i) my personal knowledge and my review of relevant documents of the Debtor, (ii) information provided to me by my counsel having personal knowledge of the matters set forth in the foregoing Motion, and (iii) the

1

record in this case. I am competent to testify to the matters herein set forth and if called upon to do so, I could and would testify to the facts set forth herein.

5.     Attached to the Motion as <u>Exhibit A</u> is a true and correct copy of the proposed Settlement.

6.     I believe it is in the best interest of the Debtor's estate to enter into this Settlement.

I declare under penalty of perjury, that the foregoing is true and correct.

Dated: Honolulu, Hawaii, September 15, 2023

/s/ Dane S. Field                          
Dane S. Field

U.S. Bankruptcy Court - Hawaii   #10-00838   Dkt # 549   Filed   09/16/23   Page 30 of 30